In the Matter of JOHN FRANCIS MORAN, an Attorney, Respondent.

First Department, July 15, 1932.

*Einar Chrystie* of counsel [*S. C. Lewis* with him on the brief], for the petitioner.

*William Lurie,* for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on May 27, 1925, at a term of the Appellate Division of the Supreme Court of the State of New York, Second Department.

By the petition herein he was charged with professional misconduct as follows: That he was retained by one Josephine Dolinsky to obtain a dissolution of her marriage, pursuant to section 7-a of the Domestic Relations Law, which provides for such dissolution where a spouse has been absent for more than five years without being known to be living during that period; that his said client paid him for his fees $180 and, in addition, $95.30, the expense of advertising in such proceeding, but that the respondent, although he prepared and filed an appropriate petition and obtained an order of the Supreme Court for the advertising of notice," and had the notice published, failed to pay for the advertising and neglected to place the proceeding on the calendar, with the result that the proceeding abated. It is charged that the respondent neglected the interests of his client, did not earn the fee that was paid him, and converted to his own use the sum of $95.30 received by him from his client to pay the costs of advertising.

The respondent answered, and the matter was referred to an official referee to take testimony with respect to the charges and to report the same to the court with his opinion thereon.

The learned referee has duly reported that an inference of improper motive may not be drawn from the facts presented at the hearing, but rather that the respondent permitted other activities to prevent him from giving to the interests of his client the attention to which she was entitled.

The matter is now before this court upon the motion of the petitioner that the court take such action in the premises as it may deem just and proper.

We regret that we are unable to agree with the conclusion of the referee. Upon the contrary, we are of the opinion that the charges are sustained by the record.

Mrs. Dolinsky testified that upon the occasion of the respondent undertaking to procure for her a dissolution of her marriage, it was agreed that the fee of the respondent should be payable in installments. At this time, May 8, 1929, Mrs. Dolinsky paid the respondent eighty dollars and received from him a receipt reading as follows: "Received from Mrs. Miller (nee Dolinsky) Eighty Dollars on account, exclusive of fee of approximately $64 for printing and advertisement to be paid later. Total fee to be approximately exclusive of advertisement charge $150 or $185." Mrs. Dolinsky, to the knowledge of respondent, could not read English. Subsequently the respondent obtained an order for service of notice upon the husband of Mrs. Dolinsky by publication, said order requiring proof of such publication to be duly filed at least twelve days before the day set for the hearing. The respondent thereupon wrote Mrs. Dolinsky as follows: "I wish to advise you that the order in the matter, of which you know, has been signed and request that you come in to see me next Monday, May 27th, with reference to same. Inasmuch as this matter has advanced thus far I would suggest a further payment of approximately $40." This request Mrs. Dolinsky complied with by paying $40 on June 3, 1929. On June twenty-fourth, at the request of the respondent, she paid the further sum of $30 and on September eighteenth, having been informed by the respondent that her case would come up for hearing on October eleventh, she paid him the sum of $30, bringing her total payments up to $180. On September 19, 1929, the day following that upon which his fee had been completely paid, the respondent wrote Mrs. Dolinsky the following letter: "In accordance with our understanding of yesterday I am inclosing herewith bill of Frank Kiernan & Co. for advertising. I have checked same up and find it to be correct.

"It is necessary that we get affidavits from this advertising company as proof of the publication of the notice as ordered by Supreme Court Justice CRAIN. These affidavits have to be filed with the Clerk of the Court before September 30 in order to have your case tried in October as scheduled. We cannot of course obtain these necessary affidavits until this bill is paid. I believe I fully explained and stressed the importance of this matter when you were here yesterday.

"Will you please attend to this matter as soon as possible, not later than next week."

With said letter was inclosed bill of Kiernan for advertising in a total sum of ninety-five dollars and thirty cents.

Mrs. Dolinsky testified: "When I got this letter I cannot read, so I had somebody to read it. I called his office and asked for

Mr. Moran, and the girl answered. I said will my case be up 11th October; she said it will not, you did not pay your bill. I says, what bill. She says; advertisements. I said I am not supposed to pay. She said you better go and see Mr. Moran."

Accordingly, at some time prior to the date fixed for the hearing, Mrs. Dolinsky called on the respondent, and asked the respondent why he had sent her the bill for advertising and for what had she paid him $180. He advised her that the $180 was for his services and that she must pay for the advertising. Whereupon, she told the respondent she would pay as soon as she could, and that in the meantime the respondent should get " the papers " and keep them until she paid, to which the respondent agreed. She testified; " So, I says, ' Well, Mr. Moran, you get those papers for me and keep it if you get it, and as soon as I have money I pay you.' So he says, ' All right, as soon as you have the money you will have to pay me for it.' "

On October 22, 1929, Mrs. Dolinsky paid the respondent forty dollars on account of Kiernan's bill. On or about November 18, 1929, she was informed by the respondent that he had to prepare another petition, and at his request she signed a new petition. The respondent at that time told her she would have nothing more to pay except the balance due on the advertising bill. This balance she paid to the respondent on December 30, 1929, receiving from the respondent the following receipt: " Received from Mrs. Miller $55.30 in full payment of advertisement of divorce case, Dolinsky v. Dolinsky, defaulted case for bill served." Upon making such payment the respondent told Mrs. Dolinsky that she owed him nothing more and that she would get her papers in about six weeks.

Subsequently repeated attempts by Mrs. Dolinsky to see the respondent at his office were unavailing. She was informed he had left. Letters left there were unacknowledged and registered letters sent to him at that address were returned by the post office. Months later Mrs. Dolinsky received a letter from Kiernan in reference to the advertising, and on calling upon him learned that no part of the bill had been paid.

In August, 1930, both Mrs. Dolinsky and Mr. Kiernan complained to the committee on grievances of the Bar Association. After hearings were had before the Bar Association, the respondent on or about March 27, 1931, gave to Kiernan his thirty-day note for $100. Kiernan testified before the referee on October 5, 1931, without denial by the respondent, that no payment whatsoever had been made on account of either the note or the advertising.

The respondent conceded that Mrs. Dolinsky's case never had

been placed upon the calendar for October 11, 1929, or for any other date. It further was conceded that the only papers on file in the New York county court house in connection with Mrs. Dolinsky's case was the order of May 23, 1929, with the petition and notice thereto attached.

The respondent attempted to shift upon one Hallahan, employed in his office, the blame for the case not having been placed upon the calendar in time to be heard upon October eleventh. He stated in his answer that he had given to Hallahan the note of issue, proof of publication and filing fees and thereafter Hallahan had reported that the papers had been filed, " and respondent wrote to said Mrs. Dolinsky and to the said Peter Spakawsky, asking both to come to respondent's offices with Mrs. Dolinsky's witnesses." The respondent in his answer further alleged that: " On October 11, 1929, the said Mrs. Dolinsky failed to appear in accordance with the respondent's advice at Special Term, Part III; that the case was held as long as possible and then dismissed. Respondent relied upon the representations of Mr. William H. Hallahan who had left the office to answer the call of the calendar on the instructions of respondent and on his return personally advised respondent of such default." All the aforesaid statements were denied by Hallahan.

That they are false is demonstrated by the evidence. That they were known to be false when made is shown by the fact that when the respondent first appeared before the grievance committee he made similar misstatements and at that time it was demonstrated to him that such statements could not possibly be reconciled with the facts. Nevertheless in his answer and in his testimony he reiterated the same false statements, notwithstanding that they carried the implication that Hallahan had been guilty of lying and stealing.

Upon the record we are constrained to hold that the respondent converted the money received from Mrs. Dolinsky for the purpose of paying the advertising bill of Kiernan. Restitution was not made until the day of final hearing before the referee. In other words, he converted this money from approximately December 30, 1929, until December 10, 1931.

We find also that the respondent neglected the interests of his clients and that his conduct throughout this case has been lacking in good faith and in candor. Moreover, he attempted to extricate himself from the situation resulting from his conduct by sham and false excuses.

On the other hand, even if the respondent had told the truth about not placing the case on the calendar instead of attempting to place the blame on Hallahan by accusing him of lying and stealing,

the respondent would not have been compelled to proceed until the advertising bill had been paid.

There is also evidence from which it may be inferred that the respondent intended to bring another action on behalf of his client, as he should have done but failed to do. Also the respondent finally refunded to Mrs. Dolinsky the amount of the fee and interest.

The respondent has an honorable war record.

Upon the record as a whole the respondent should be suspended for a period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, McAVOY, MARTIN and SHERMAN, JJ., concur.

Respondent suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.